IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GARY V. DAVIS**, | Case No. 6:15-cv-0044-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

Robyn M. Rebers, Robyn M. Rebers, LLC, P.O. Box 3530, Wilsonville, OR 97070. Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Martha A. Boden, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900, M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Gary V. Davis ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

On March 4, 2011, Plaintiff filed an application for SSI alleging that he became disabled on July 15, 2009. AR 14. Plaintiff was born in 1952, was 57 years old at the alleged disability onset date, and is currently 64 years old. AR 69. On June 27, 2013, a hearing was held before an

Administrative Law Judge ("ALJ"). AR 30-68. On July 11, 2013, the ALJ issued a decision

finding Plaintiff not disabled. AR 14-25. On November 24, 2014, the Appeals Council denied

Plaintiff's request for review, making the ALJ's decision final and entitling Plaintiff to review in

this Court. AR 4-9; 42 U.S.C. § 405(g).

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 4, 2011, the application date. AR 16. At step two, the ALJ found that Plaintiff had the following severe impairments: heart disease, hypertension, diabetes, and obesity. AR 16.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart, Appendix 1. AR 20. The ALJ determined Plaintiff has the following RFC:

> I find that the claimant has the residual functional capacity to lift up to 25 pounds occasionally and lift or carry up to 10 pounds frequently. He can stand or walk for approximately six hours and sit for approximately six hours in an eight-hour workday with normal breaks. The claimant can occasionally climb ladders, ropes or scaffolds. He should avoid moderate exposure to extreme cold, extreme heat, and workplace hazards such as unprotected machinery and unprotected heights.

AR 20.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as an office cleaner. AR 25. As such, the ALJ concluded Plaintiff was not disabled since March 4, 2011, the date he filed his SSI application. AR 25.

## DISCUSSION

Plaintiff contends the Commissioner did not support her decision with substantial evidence or apply the correct legal standards in three respects: (1) the Commissioner failed to provide clear and convincing reasons for discrediting Plaintiff's testimony; (2) the ALJ's RFC

determination was not supported by substantial evidence because she failed to include all of Plaintiff's supported functional limitations; and (3) the ALJ erroneously relied upon vocational expert testimony that conflicts with the Dictionary of Occupational Titles ("DOT").

## A. Plaintiff's Credibility

There is a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged, she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, daily activities, work record, and observations of physicians and third parties regarding the

claimant's alleged functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner

recommends assessing the claimant's daily activities, the location, duration, frequency, and

intensity of the individual's pain or other symptoms; factors that precipitate and aggravate

symptoms; the type, dosage, effectiveness, and side effects of any medication the individual

takes or has taken to alleviate pain or other symptoms; and any measures other than treatment the

individual uses or has used to relieve pain or other symptoms. *See* Social Security Ruling

("SSR") 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative

credibility finding "solely because" the claimant's symptom "is not substantiated affirmatively

by the objective medical evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th

Cir. 2006).

        Further, the Ninth Circuit has stated that an ALJ also "may consider . . . ordinary

techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

statements concerning the symptoms, . . . other testimony by the claimant that appears less than

candid [and] unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be

upheld overall even if not all of the ALJ's reasons for rejecting claimant's testimony are upheld.

*Batson*, 359 F.3d at 1197.

        Here, the ALJ found that Plaintiff's "medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms[.]" AR 21. The ALJ further

found, however, that "the claimant's statements concerning the intensity, persistence and limiting

effects of these symptoms are not entirely credible[.]" AR 21.

        Plaintiff alleged that his ability to work was limited by heart disease, diabetes, high blood

pressure, and illiteracy. AR 199. He testified that he was illiterate, with a fourth grade education.

AR 18, 204, 215, 217. He testified he could not read at all, and that he got his driver's license by oral examination. AR 57-58.

Plaintiff also reported symptoms including fatigue, pain, weakness, and heaviness in his legs. AR 199, 320. He testified that his legs burn all the time, hurt with walking, and have worsened since 2009. AR 40. He explained that his leg pain does not bother him very much when he sits, but starts to hurt when he gets up and moves around; he can be up and moving about 25-30 minutes and then he needs to sit down for about one half hour until his legs quit throbbing. AR 49. He testified that the pain in his lower back started around the time he started to have pain in his legs. AR 51. He initially reported his leg pain to his cardiologist, who suggested he find a primary care provider. AR 47.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms. AR 21. The ALJ also found, however, that Plaintiff's statements concerning his incapacity are not borne out by the objective evidence of record, and that his subjective pain complaints, by themselves, do not establish disability. The ALJ's conclusion that the objective medical evidence is inconsistent with the severity of Plaintiff's alleged pain is supported by substantial evidence.

The ALJ first noted that the evidence did not show Plaintiff's heart disease to be as limiting as Plaintiff alleged. AR 21. The ALJ reviewed and described Plaintiff's cardiac history, including: a July 16, 2009, successful angioplasty and stenting; a March 1, 2010, report that Plaintiff had passed out twice since January, but had no further syncopal episodes since he started taking his medications regularly; two incidents (one in April 2011 and one in January 2012) when Plaintiff sought emergent care for chest pain in which his cardiac workups were normal; a June 14, 2012 report indicating Plaintiff had rare episodes of chest pain; and, a

December 13, 2012 report that Plaintiff had occasional episodes of angina with pain reliably relieved by sublingual nitroglycerin, with a normal cardiovascular exam. AR 22. The ALJ also noted that on February 19, 2013, Plaintiff sought emergent care after experiencing chest pain off and on. AR 22. Plaintiff was found to have a myocardial infarction ("MI"), and catheterization showed total occlusion of the obtuse marginal artery, which was treated with angioplasty and stenting with no residual stenosis. AR 22. On June 4, 2013, Plaintiff denied any chest pain and his cardiologist noted that a creatine kinase MB test at the time of the February MI suggested very little, if any, heart damage. AR 22. The ALJ concluded that, overall, Plaintiff's medical records did not support a finding that the heart disease, while a serious impairment, would prevent Plaintiff from engaging in light exertional work.

The ALJ indicated there was no objective evidence in the record to support Plaintiff's claims of disabling leg pain and back pain. The ALJ also found that, although Plaintiff's diabetes was typically uncontrolled during the relevant period, the evidence did not show that Plaintiff had nephropathy or retinopathy. AR 23. Although Plaintiff testified that he began experiencing neuropathic pain in the lower extremities a couple months prior to the hearing, a June 13, 2013, examination by Julie Slind-Hull, FNP-C showed no motor deficits. AR 17, 23. Although Nurse Slind-Hull diagnosed Plaintiff with type 2 diabetes with neurological complications and diabetic polyneuropathy and noted "pain in his feet bilaterally affecting sensation," she also reported that his sensory examination was normal to light touch and pinprick, and she did not mention any abnormal deep tendon reflexes or monofilament testing. AR 17. Moreover, the ALJ noted that contrary to Plaintiff's testimony, the medical evidence indicated he has normal strength in his upper and lower extremities and his gait is normal. AR 23.

The ALJ also remarked that Plaintiff was not taking any prescription pain medication for back or joint pain, which is inconsistent with his report that he naps regularly due to pain. Indeed, even though Plaintiff testified that his doctor told him the only thing she could do for his leg pain is give him pain pills, the medical records do not indicate any prescription for pain medications. AR 47-48, 366, 374.

Finally, the ALJ noted that Plaintiff stopped working in July 2009 because he was laid off from his last job, and that he subsequently collected unemployment benefits in 2010 and 2011. AR 23. Plaintiff also testified that he looked for work while receiving unemployment benefits and attempted to get his old job back. AR 23. The ALJ concluded, therefore, that it appeared Plaintiff's current unemployment was at least partially attributable to his difficulty finding work. AR 23.

Evidence that a plaintiff was no longer working for reasons other than the alleged impairment may provide reason for an ALJ to discredit that plaintiff's testimony. *See Harrelson v. Astrue*, 273 F. App'x 632, 634 (9th Cir. 2008) (finding the ALJ did not err in discrediting the plaintiff's pain testimony because she quit work for religious reasons rather than due to an impairment); *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as amended* (Nov. 9, 2001) (among the "specific, cogent reasons" for disregarding the plaintiff's testimony were his statements that he was laid off, not injured); *Carroll v. Colvin*, 2014 WL 4102314, at *7 (D. Or. Aug. 18, 2014) (holding that the ALJ was "entitled to reject" the plaintiff's symptom testimony because he stopped working after he was laid off, not due to his allegedly disabling conditions). Reliance on a claimant's receipt of unemployment benefits, however, is an improper reason to discredit a claimant's testimony unless the record establishes that the claimant held

himself or herself out as being available for full-time work.[1] *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Plaintiff testified that after the lay-off, he attempted to get his old, full-time job back on more than one occasion, but they said they did not need him. AR 40, 43. As such, the ALJ's reliance on Plaintiff's receipt of unemployment benefits as basis to discredit his testimony was not in error.

In sum, the ALJ offered clear and convincing reasons supported by substantial evidence for finding Plaintiff not credible. Thus, the ALJ's credibility finding is affirmed.

**B.  Whether the RFC was Supported by Substantial Evidence**

Plaintiff argues the ALJ erred in failing to include all of his functional limitations in the RFC. Specifically, Plaintiff argues the ALJ failed to include all supported functional limitations resulting from his diabetes, heart disease, spinal arthritis, and borderline intellectual functioning. A more restrictive limitation in Plaintiff's ability to stand or walk, he contends, would preclude the ability to perform his past relevant work and result in a finding of disability pursuant to grid rule 201.02. Further, an additional restriction in Plaintiff's mental functioning and literacy would affect his ability to perform competitive employment should the analysis proceed to step five. The Court disagrees.

An RFC determines a claimant's "capacity for work activity on a regular and continuing basis." 20 C.F.R. § 416.945(c). It characterizes "the most" a claimant can do in a "work setting," despite "limitations." 20 C.F.R. § 416.945(a)(1). The "RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or

---

[1] In Oregon, to be eligible for unemployment benefits the claimant must, among other things, be "able to work . . . available for work, and . . . actively seeking an unable to obtain suitable work." Or. Rev. Stat. § 657.155(c). An individual is considered available for work if willing to work full-time, part-time, or accept temporary work opportunities. Or. Admin. R. 471-030-0036(d)(a).

combination of impairments, including the impact of any related symptoms." SSR 96-8p, 1996 WL 374184 at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945.

The functional limitations caused by a claimant's medically determinable impairments include "medically determinable impairments that are not 'severe.'" 20 C.F.R. § 416.495(a)(2). The ALJ must assess "all of the relevant medical and other evidence" pertaining to a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.495(a)(4). Mental limitations potentially affecting one's inability to work include: "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting . . . ." 20 C.F.R. § 416.495(c). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Plaintiff first argues the ALJ should have included in the RFC more restrictive limitations resulting from his diabetes, heart disease, and degenerative changes of the thoracic spine (or arthritis). In support of his argument, Plaintiff contends that the record reflects well-documented, often uncontrolled diabetes, complaints of leg pain and heaviness, a diagnosis of neuropathy, his inability to be on his feet and moving for no more than 25-30 minutes before needing to sit down, and back pain.

To the extent Plaintiff relies upon his subjective reports of pain, as noted the ALJ provided clear and convincing reasons for discrediting Plaintiff. Moreover, while Plaintiff was "diagnosed" with neuropathy, the diagnosis was based upon Plaintiff's subjective reporting, as the objective tests performed at the time of the diagnosis showed his "sensory exam was normal to light touch and pinprick," and his "[g]ait was normal and no motor deficits," and "no limb weakness, no difficulty walking." AR 367-68.

With respect to Plaintiff's heart disease, following a September 5, 2008 consultative cardiology examination, Kurt Brewster, M.D., opined that Plaintiff had no restrictions lifting, carrying, and sitting, and that Plaintiff could stand or walk for six hours in an eight-hour day with 15-minute breaks every two hours. AR 23, 263-64. On April 12, 2011, state agency medical consultant Richard Alley, M.D., opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and that he could stand and walk for approximately six hours and sit for approximately six hours in an eight-hour workday with normal breaks. AR 24, 74-76. On February 7, 2012, state agency medical consultant Neal Berner, M.D., opined the same residual functioning capacity. AR 24, 87-88. Finally, an April 20, 2011, chest x-ray showed only mild degenerative changes in Plaintiff's thoracic spine, and a July 26, 2013, lumbar spine imaging revealed mild to moderate diffuse degenerative spondylosis change, and no evidence of acute vertebral compression or overt malalignment. AR 379.

The ALJ explicitly accounted for Plaintiff's diabetes, heart disease, and complaints of back pain in assessing an RFC that limited Plaintiff to standing or walking for six hours out of an eight-hour day. Plaintiff has not established that a greater limitation was dictated by the record.

Plaintiff next argues that the ALJ erred in finding his borderline intellectual functioning as not severe and, in any event, failed to include adequate limitations regarding Plaintiff's difficulty with persistence, understanding, and following simple instructions. The ALJ evaluated evidence of Plaintiff's intellectual functioning, addressing first an examination report from Frank Lahman, Ph.D., who performed an intellectual assessment on referral from the state agency. AR 18. The ALJ noted that intelligence test scores obtained by Dr. Lahman were consistent with intellectual deficiency or mild mental retardation range, but also that Dr. Lahman

opined that the scores underestimated Plaintiff's abilities.[2] AR 18. Dr. Lahman provisionally diagnosed Plaintiff with borderline intellectual functioning, and opined that the low test scores reflected a lack of motivation and that Plaintiff did not make a serious attempt at all of the tasks. AR 18, 253-54.

The ALJ also considered an April 12, 2011, psychological assessment performed by state agency psychological consultant Kordell Kennemer, Psy.D. Dr. Kennemer opined that Plaintiff had no difficulties in maintaining social functioning, and only mild difficulties in maintaining concentration, persistence, or pace. AR 19, 73. As the ALJ noted, on February 6, 2012, state agency psychological consultant Paul Rethinger, Ph.D. affirmed Kr. Kennemer's assessment. AR 19, 85.

Finally, the ALJ considered Plaintiff's report of activities, including his report that he obtained a driver's license and drives, he worked at substantial gainful activity for years,[3] and he supervised four to six people all day at his last job. AR 18-19. The ALJ noted no indication that concentration deficits or other cognitive issues caused Plaintiff to perform poorly at his last job—he was able to complete tasks in a timely fashion and a questionnaire completed by his

---

[2] The Court notes that Dr. Lahman administered the Wechsler Adult Intelligence Scale-Revised, on which Plaintiff obtained a verbal IQ score of 64, a performance IQ score of 70, and a full-scale IQ score of 74. AR 18, 253. Dr. Lahman opined that both the verbal and performance scores modestly underestimated Plaintiff's abilities, and that the verbal IQ might be elevated into the high 60's to low 70's, whereas the performance IQ may have been elevated into the mid-to-upper-70's, and that Dr. Lahman believed that the lower scores reflected Plaintiff's lack of motivation. AR 254.

[3] The ALJ specifically noted that Plaintiff worked as a "janitor," which is semi-skilled. The VE testified, however, that upon reviewing the Work History Report completed by Plaintiff, the VE originally thought Plaintiff had performed the job of a janitor, which is semi-skilled, but that upon hearing in more detail at the administrative hearing the tasks performed by Plaintiff, the more accurate job description was "office cleaner," which is unskilled, light work. Thus, the Court does not rely on the ALJ's reasoning that Plaintiff had performed semi-skilled work.

former employer indicated that before Plaintiff's heart condition, he was able to perform work duties without supervision and could complete tasks well within job limits. AR 19, 250-51.

Assuming without deciding that Plaintiff had the severe impairment of borderline intellectual functioning, any error by the ALJ in evaluating this impairment was harmless to Plaintiff because the ALJ found other severe impairments and then considered the impact of all of Plaintiff's conditions, both severe and non-severe, and including Plaintiff's intellectual functioning, in evaluating Plaintiff's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch*, 400 F.3d at 682. The ALJ's step four analysis evaluated in detail whether Plaintiff had any limitations from an intellectual impairment and found that Plaintiff did not. AR 23. Even if Plaintiff did have some limitations from borderline intellectual functioning and required simple instructions, it would not have altered the ALJ's ultimate determination. The ALJ determined Plaintiff was capable of performing his past relevant work as an office cleaner. AR 25. The position of office cleaner is an unskilled job and has a reasoning level of one. DOT 323.687-014. Reasoning level one requires that the worker "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App'x C, *available at* 1991 WL 688702.

The ALJ's RFC finding was supported by substantial evidence. The finding was proper because it "took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints" that lacked credibility. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Accordingly, the ALJ did not err in assessing Plaintiff's RFC.

**C.  Whether There is a Conflict Between the VE's Testimony and the DOT**

Finally, Plaintiff argues the ALJ erred in relying upon VE testimony that conflicted with the DOT. Specifically, Plaintiff contends that the VE's testimony that Plaintiff could perform his past relevant work of office cleaner given the RFC limitation of standing or walking for approximately six out of eight hours conflicts with the DOT definition of "office cleaner," which Plaintiff contends requires an individual to be on his or her feet for eight hours a day.

The DOT is presumptively authoritative regarding job classifications, but that presumption is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id*. Where there is an apparent conflict between VE testimony and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination or decision about whether a claimant is disabled." SSR 00-4p at *2; *see also Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007) (the ALJ must first determine whether a conflict exists and, if so, the ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT).

Here, the ALJ asked the VE if an individual could perform Plaintiff's past relevant work if limited to:

> lift[ing] up to 25 pounds occasionally and lift[ing] or carry[ing] up to 10 pounds frequently. *He can stand <u>or</u> walk for approximately six hours* and sit for approximately six hours in an eight-hour workday with normal breaks. The claimant can occasionally climb ladders, ropes or scaffolds. He should avoid moderate exposure to extreme cold, extreme heat, and workplace hazards such as unprotected machinery and unprotected heights.

AR 64 (emphasis added). The VE responded that an individual with such limitations could return to Plaintiff's past work as an office cleaner. The ALJ asked the VE if his testimony conflicted

with the DOT and its companion publication, the Selected Characteristics of Occupations, and the VE responded that "there would be no changes to the published values." AR 66-67. In his opinion, the ALJ found that the VE's testimony was consistent with the information contained in the DOT. AR 25.

Plaintiff contends that the VE's response does not answer the question as to whether or not there is a conflict and, further, that there is an apparent discrepancy between the VE's testimony and the DOT. According to Plaintiff, the ALJ's RFC limiting him to being on his feet for a total of six hours conflicts with the position of "office cleaner," because that position necessarily requires an individual to be on his or her feet for eight hours a day.

For social security purposes, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. "Light work" is defined to involve "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 28 C.F.R. § 404.1567(b). The position of "office cleaner" as identified by the VE is defined as light exertion in the DOT, with the following description:

> Cleans rooms and halls in commercial establishments, such as
> hotels, restaurants, clubs, beauty parlors, and dormitories,
> performing any combination of following duties: Sorts, counts,
> folds, marks, or carries linens. Makes beds. Replenishes supplies,
> such as drinking glasses and writing supplies. Checks wraps and
> renders personal assistance to patrons. Moves furniture, hangs
> drapes, and rolls carpets. Performs other duties as described under
> CLEANER (any industry) I Master Title. May be designated
> according to type of establishment cleaned as Beauty Parlor
> Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according
> to area cleaned as Sleeping Room Cleaner (hotel & rest.).

DOT 323.687-014.

As noted, Plaintiff contends that the position of office cleaner requires that an individual be on his or her feet for eight hours a day. Plaintiff provides little evidence or argument to support this assertion. Plaintiff cites *Keyser v. Colvin*, 2015 WL 1319503 (D. Or., March 23, 2015) for the proposition that a vocational expert testified that an individual who was limited to standing or walking no more than six hours in an eight-hour workday could not perform light work as a grocery store cashier since that job would require that most of the day be spent standing. Plaintiff also cites SSR 83-10, which states "[r]elatively few unskilled light jobs are performed in a seated position." However, Plaintiff does not cite, and this court could not locate, any precedent for the proposition that an individual limited to walking or standing six hours in an eight-hour workday could not perform the duties of an officer cleaner; indeed, numerous cases hold the contrary, albeit without discussion of this particular issue. *See, e.g.*, *Lockwood v. Commissioner Social Sec. Admin.*, 616 F.3d 1068 (9th Cir. 2010) (affirming ALJ finding of no disability where RFC posited individual could "stand and walk 6 hours out of an 8-hour day and sit 6 hours out of an 8-hour day" and ALJ found the individual could perform job of house cleaner), *cert. denied*, 563 U.S. 976 (2011); *Allen v. Astrue*, 2012 WL 253209 (D. Or., Jan. 26, 2012) (same); *Burns v. Commissioner Social Sec. Admin.*, 2015 WL 4203923 (D. Or., July 10, 2015) (same); *Thomas v. Colvin*, 2015 WL 4887615 at *12 (S.D. Texas, Aug. 17, 2015) (affirming ALJ finding of no disability where ALJ relied upon VE testimony that individual who could "stand and walk about six hours in an eight-hour day with normal breaks or sit for six" could perform work as "officer cleaner at the light, unskilled level"). In sum, Plaintiff has not established that the VE's testimony conflicts with the DOT.

Where the VE's testimony does not conflict with the DOT and is properly based on the claimant's RFC and other vocational factors, the ALJ can rely on that opinion. *Bayliss*, 427 F.3d

at 1218, *see also Hill v. Astrue*, 365 Fed. App'x 808, 810 (9th Cir. 2010). Thus, because there was no apparent conflict between the VE's testimony and the DOT as to this issue, the ALJ properly relief on it.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled within the meaning of the Social Security Act is **AFFIRMED**.

**IT IS SO ORDERED**.

DATED this 3rd day of February, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge